**JS – 6**

**LINKS: 62, 63, 69, 84**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:**      **(In Chambers)**

### ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT

### I.
### INTRODUCTION

Plaintiff Kandy Kiss of California, Inc. ("Kandy Kiss"), a garment wholesaler, purchased large amounts of fabric from a Chinese fabric manufacturer and used it to produce garments sold to a clothing retailer in the United States. Non-party LA Printex discovered the retailer's sale of the garments, claimed that it owned copyrights in the fabric design and brought suit and ultimately obtained judgment against Kandy Kiss and others for copyright infringement. In this lawsuit, Kandy Kiss seeks recovery from Defendant Tex-Ellent, Inc. d/b/a Paramount Textiles ("Paramount") and Shahram Zackary, its owner, who purportedly brokered the sale of the fabric to Kandy Kiss. Kandy Kiss asserts claims for breach of express and implied warranty, fraud and negligent misrepresentation on the principal ground that Paramount either directly or tacitly represented that it had the right to sell fabric bearing the LA Printex design. (See Docket No. 54 [Second Amend. Compl. ("SAC")].) Both Parties move for summary judgment. Paramount moves on all claims; Kandy Kiss moves on its express warranty claim. (Docket No. 62 [Paramount Mem.]; Docket No. 63 [Kandy Kiss Mem.].)

The Court concludes that Paramount's motion for summary judgment should be **GRANTED**, and Kandy Kiss' motion for summary judgment should be **DENIED**. Paramount cannot be held to have expressly or impliedly warranted the goods at issue because it did not

JS – 6

LINKS: 62, 63, 69, 84

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

qualify as the "seller" of the goods within the meaning of California Commercial Code sections 2312 and 2313. Despite some conversations between Paramount and Kandy Kiss regarding the fabric, and Kandy Kiss's offer to enter into an agreement with Paramount, no such agreement was ever consummated. Indeed, ***before*** Kandy Kiss purchased the fabric, its representatives were notified that Paramount did not own the fabric pattern but had obtained the sample from Pallas Textile Co., Ltd. ("Pallas"), a Chinese fabric mill. And in fact, Kandy Kiss arranged to have its Chinese garment manufacturers, Apparelway, Inc. and Hongdou, Inc., purchase the fabric directly from Pallas. Thus, while Kandy Kiss first became interested in the fabric through discussions with Paramount, Paramount was not a party to the transaction through which Kandy Kiss purchased the offending fabric. As to the misrepresentation claims, the undisputed facts establish that Kandy Kiss was put on notice that an issue existed regarding the ownership of the design by August of 2007, and that this suit was not brought within three years of that date. Accordingly, the statute of limitations has run on the misrepresentation claims.

After filing its motion for summary judgment, Paramount applied to the Court ex parte for leave to file a Rule 11 sanctions motion after the motion cut-off date. (Docket No. 84.) As set forth below, this application is **DENIED**.

## II.
## FACTS

### A. THE PARTIES AND THEIR BUSINESSES

Defendant Paramount is a textile importer and fabric wholesaler. It does not manufacture or print its own fabric, but rather imports printed fabric from third parties to resell locally. (Docket No. 74 [Plaintiff's Statement of Genuine Issues ("KKSGI")] ¶ 1; Docket No. 72-2 [Second Zackary Decl.] ¶¶ 3–4; Docket No. 72-3 [Second Rome Decl.] ¶ 11, Ex. I [10/10/11 Browner Depo.] 10:16–11:1.) Plaintiff Kandy Kiss is an apparel manufacturer that acquires its fabric from various suppliers, such as Paramount. Typically, Kandy Kiss samples fabric from sales agents for fabric suppliers, places orders for "production yardage" of fabric chosen, and arranges for the overseas production of finished garments from this fabric for sale to clothing retailers. On fewer occasions, Kandy Kiss would purchase the fabric directly from an overseas fabric mill, or arrange to have the garment manufacturing plant purchase the fabric directly from the mill and bill the total project cost to Kandy Kiss. (Docket No. 83 [Defendants' Objections to Plaintiff's Statement of Additional Material Facts ("POSAF")] ¶ 40; Docket No. 64 [Akin Decl.] ¶ 3; 10/10/11 Browner Depo. 43:5–17.) Paramount was one of the fabric suppliers with whom

**LINKS: 62, 63, 69, 84**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

Kandy Kiss conducted business prior to the events giving rise to this lawsuit.  (Docket No. 78 [Second Lander Decl.] ¶ 18, Ex. P [3/26/09 Zackary Depo.] 68:7–20.)

In 2005 and 2006, a non-party company by the name of LA Printex filed five lawsuits against Kandy Kiss for infringement of registered textile designs.  (Docket No. 72-6 [Defendants' Statement of Disputed Facts ("PSDF")] ¶ 2; Akin Decl. ¶ 4; Docket No. 67 [Plaintiff's Req. Judicial Not. ("KKRJN")][1], Exs. A–E.)  These lawsuits "affected the way Kandy Kiss did business with its fabric suppliers."  (PSDF ¶ 3; Akin Decl. ¶ 4).  In an effort to avoid further litigation, Kandy Kiss "decided it would not purchase fabric bearing an identifiable pattern unless the supplier represented and warranted ownership of the pattern."  (PSDF ¶ 3; Akin Decl. ¶ 4).  For its part, Paramount "had a pattern and practice of 'checking the ownership of the pattern before it engaged in a transaction on that pattern' because of 'all [of the] lawsuits that were going on,'" referring to those filed by LA Printex.  (PSDF ¶ 4; Second Lander Decl. ¶ 4, Ex. A [Plaintiff's Excerpt of 8/19/09 Zackary Testimony] 70:5–19.)

**B. THE 2007 DISCUSSIONS**

**1. INDEPENDENT SALES REPRESENTATIVE DAVID BROWNER PROVIDES A FABRIC SAMPLE TO KANDY KISS**

In February of 2007, David Browner, an independent sales representative for Paramount, provided a fabric sample, pulled from Paramount's design room, with a paisley print (the "Design") to Kandy Kiss representatives, for the company's consideration for use in producing garments.  (KKSGI ¶ 2; PSDF ¶¶ 7, 14, 29; POSAF ¶ 41; Docket No. 62-2 [First Zackary Decl.] ¶ 6; Docket No. 62-1 [First Rome Decl.] ¶ 7, Ex. E [9/30/11 Akin Depo.] 27:21–29:14; Plaintiff's Excerpt of 8/19/09 Zackary Testimony 75:21–25, 87:12–14, 88:8–9, 88:23–89:4; Second Lander Decl. ¶ 6, Ex. C [8/20/09 Browner Testimony] 55:1–5, 56:15–19, 57:3–17; Second Lander Decl. ¶ 5, Ex. B [8/19/09 Akin Testimony] 122:6–18; 10/10/11 Browner Depo. 49:19–21.)  The sample bore a "header," a rectangular document attached to the top placed there by Browner, bearing the name of Paramount Textiles "in large text and centrally placed."  Below this text, in smaller, but still prominent, font, was the phrase, "TEXTILE IMPORTERS & DOMESTIC CONVERTERS."  Below this, Paramount's contact information was given,

---

[1] The Court takes judicial notice, pursuant to Federal Rule of Evidence 201, of the documents requested by both Parties because all are matters of public record.  See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) ("under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record'").

**JS – 6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

including mailing address, telephone and fax numbers, and e-mail and web site addresses.  Also printed on the header, as background, was the name "Paramount Textiles," in rows of ovals, repeating more than fifty times.  The header did not bear any copyright notices in the forms prescribed by 17 U.S.C. § 401.  (POSAF ¶ 42; PSDF ¶ 10–11; Plaintiff's Excerpt of 8/19/09 Zackary Testimony 71:15–22; 8/20/09 Browner Testimony 58:21–59:4; 10/10/11 Browner Depo. 21:16–23; Second Rome Decl. ¶ 3, Ex. A [7/12/10 Akin Depo.] 55:10–56:2; see First Rome Decl. ¶ 9, Ex. G [Fabric Sample with Paramount Header].)

Before providing the fabric sample to Kandy Kiss, Browner had removed a header from it that identified the company that supplied the sample to Paramount: Pallas Textile Co., Ltd. ("Pallas"), a Chinese fabric "mill."  (PSDF ¶ 12; 8/20/09 Browner Testimony 58:17–59:4.) Pallas shares no corporate affiliation with Paramount; however, Paramount sometimes obtains fabric from Pallas, and Kandy Kiss also does business with this entity.  (KKSGI ¶ 9; First Zackary Decl. ¶ 4; Second Zackary Decl. ¶¶ 8–9.)  Browner placed a Paramount header on the fabric, in keeping with Paramount's practice, because he did not want Kandy Kiss to go directly to Pallas to buy production yardage.  (PSDF ¶¶ 12–13; POSAF ¶ 43; 8/20/09 Browner Testimony 58:21–59:4; 10/10/11 Browner Depo. 52:7–17, 53:18–54:6; Plaintiff's Excerpt of 8/19/09 Zackary Testimony 71:15–22; Docket No. 72-2 [Second Zackary Decl.] ¶ 7.)  Browner did not affirmatively represent to Kandy Kiss that Paramount owned the design or the print, but he did have an understanding with Kandy Kiss' President, Tad Akin, that he would not sample fabric to the company if he did not believe that the seller had the right to sell the fabric. (10/10/11 Browner Depo. 47:2–6, 103:10–104:2; see also 8/19/09 Akin Testimony 140:3–141:6.)  Akin could not recall a specific date on which he advised Browner and Zackary that they should not show prints to Kandy Kiss to which they do not have the rights, but he "typically" has such a discussion with all suppliers as a "condition" of doing business.  On the basis of this practice, Akin contends that he believed that Paramount owned the Design at issue in this lawsuit.  (KKSGI ¶¶ 33–34; Second Rome Decl. ¶ 13, Ex. K [2/25/09 Akin Depo.] 35:1–37:10; 9/30/11 Akin Depo. 143:3–10.)  However, Paramount knew that the design had come from China, and as discussed below, disclosed that fact to Kandy Kiss before it placed its order for the fabric.  (PSDF ¶ 6; Second Rome Decl. ¶ 12, Ex. J [Defendant's Excerpt of 8/19/09 Zackary Testimony] 76:1–15.)

## 2. TARGET SELECTS THE PAISLEY DESIGN

Kandy Kiss received one sample yard of fabric bearing the Design from Paramount and

**JS – 6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

showed it to a buyer from Target Corporation ("Target"), one of Kandy Kiss's largest customers. (PSDF ¶ 19; Zackary Decl. ¶ 9; 7/12/10 Akin Depo. 20:5–9, 51:13–22, 75:5–76:16.)  The Target buyer selected the print to be used by Kandy Kiss in the production of girl's sundresses in three sizes pursuant to an earlier agreement between Target and Kandy Kiss.  (KKSGI ¶¶ 3, 5; POSAF ¶¶ 46–47; PSDF ¶¶ 15, 18; 7/12/10 Akin Depo. 60:18–61:16, 9/30/11 Akin Depo. 34:1–38:21; 8/19/09 Akin Testimony 122:6–123:7.)  Kandy Kiss notified Browner that Target had selected the print and asked Browner to make some modifications, to create a two-way design that repeated in intervals.  (KKSGI ¶¶ 3–4; First Zackary Decl. ¶ 7; 7/12/10 Akin Depo. 25:20–26:19, 78:15–79:15; Docket No. 62-3 [Defendants' Req. Judicial Not. ("PRJN"), Ex. E [Plaintiff's Opp. to Mot. Dismiss] at 2:9–11.)

### 3. KANDY KISS ATTEMPTS TO ORDER THE FABRIC FROM PARAMOUNT

On March 16, 2007, Kandy Kiss sent to Paramount three documents, referred to in the industry as "fabric commitments," or "fabric commits," for shipment of production yardage of the modified pattern.  (PSDF ¶ 20; POSAF ¶ 49; Second Lander Decl. ¶¶ 8–10, Exs. E, F, G.)  These fabric commitments referenced "Target" in the "Notes" field.  The yardage was to be shipped to a clothing manufacturer in China, Apparelway, Inc. ("Apparelway"), which would issue the actual purchase order and pay for the fabric.  (See Second Lander Decl. ¶¶ 8–10, Exs. E, F, G.)  Browner informed Shahram Zackary, Paramount's President, that Kandy Kiss also intended to have Hongdou, Inc., another Chinese garment manufacturer, purchase the fabric from Paramount and manufacture the finished garments.  (First Zackary Decl. ¶ 12; SAC ¶ 13.)  Neither Apparelway nor Hongdou has any corporate affiliation with Paramount or with Kandy Kiss, but Kandy Kiss sometimes works with them.  (KKSGI ¶ 10; First Zackary Decl. ¶ 13.)  Thus, the proposed transaction would have involved the acquisition of fabric by Apparelway and Hongdou from Paramount, the delivery of the requested fabric to the Chinese manufacturers, and the delivery of the finished garments to Kandy Kiss for final delivery to Target.  However, at this point, Paramount bowed out of the transaction.

### 4. PARAMOUNT DECLINES THE ORDER; KANDY KISS BUYS DIRECT FROM THE MILL, WITH PARAMOUNT'S ASSISTANCE

On March 22, 2007, Eya Click of Paramount sent an e-mail to Akin and others at Kandy

**JS – 6**

**LINKS: 62, 63, 69, 84**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|----------|----------------------|------|---------------|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

Kiss, stating that Paramount was "not able to handle this order." (KKSGI ¶ 8; PSDF ¶ 21; Zackary Decl. ¶ 15, Ex. B [3/22/07 Click E-mail].)  The message continued:

> Since you and Pallas Textile work together, it is better if you just deal with them direct.  And beside the pattern that you guy's [sic] want is their own pattern.  Really sorry for the inconvenience, but due to the nature of prints that we are not familiar with, better to send your order direct to them, that way we're not having any problem as to any late delivery.
> Another issue is, since we have a bad history of [dealing with] Hongdou before, we are not comfortable working with them especially in regards to payment issues.
>
> We apologize for any inconvenience cause[d], but Paramount will help in regards to follow-up and other issues, to expedite the order.
> If we can be of any help, please let us know[.]
> Eya Click

(3/22/07 Click E-mail (emphasis added).)  In short, Kandy Kiss was unambiguously notified in March 2007 that the pattern at issue in this case was not owned by Paramount but rather that Paramount had obtained the fabric pattern from Pallas.

Zackary further explained Paramount's reluctance to become involved in the transaction. He advised that "Paramount had a bad relationship with Hongdou" because "Hongdou had a number of outstanding debts to Paramount and had a very poor payment history"; thus, he had told Browner to communicate to Kandy Kiss that Paramount "will not do this deal."  (First Zackary Decl. ¶ 14; see also 10/10/11 Browner Depo. 104:17–106:5.)  Click's e-mail clearly established that Paramount would not sell any fabric to Kandy Kiss, that Paramount did not own the pattern, that the pattern was in fact owned by Pallas, and that, if Kandy Kiss wanted the fabric, it would have to buy it directly from Pallas.

Akin was angry and threatened Zackary with liability for Kandy Kiss' lost sales to Target. (See 9/30/11 Akin Depo. 136:16–137:23, 139:9–140:12; First Zackary Decl. ¶ 16; 10/10/11 Browner Depo. 74:18–75:7.)  Browner attempted to intercede.  For example, Browner wrote to Akin on March 29, 2007:

> The situation stands as is--Paramount is insisting that Norman of Hongdou adheres to the original agreement for the [letter of credit] to be on site--period----so too [Pallas]--

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

however if we go through [Pallas]--you won't have to pay VAT--that's the best deal I can broker.  Any future production dealing with Hongdou-- Paramount would work with Hongdou on [letters of credit] with 30 day terms - if agreed to prior to placing any PO.  I'm trying to contact Norman (have left message for him)..  question--can you intercede and get Norman to do his [letter of credit] on the 6th as originally agreed to-- Thanks

(POSAF ¶ 52; Second Lander Decl. ¶ 12, Ex. I [3/29/07 Browner E-mail].).  On March 30, Browner wrote to Akin that he "spoke with [Norman of Hongdou] this morning at length," and that Browner would "make sure Kandy Kiss is not compromised over this BS squab[b]le over (he said she said)."  (POSAF ¶ 52; Second Lander Decl. ¶ 13, Ex. J [3/30/07 Browner E-mail].) In an e-mail exchange later that day, Akin and Browner arranged for a lunch meeting with Norman and Zackary on April 2, 2007, so that they could "all discuss together."  (POSAF ¶ 52; Second Lander Decl. ¶ 13, Ex. J [3/30/07 Akin E-mail].)

However, Kandy Kiss ultimately took the advice.  Following Click's e-mail, production yardage of fabric bearing the Design was acquired directly from Pallas without Paramount's involvement and used to produce girls' sundresses for Kandy Kiss.  On behalf of Kandy Kiss, Apparelway and Hongdou sent purchase orders to Pallas for production fabric bearing the Design.  Pallas manufactured and delivered the fabric to Hongdou and Apparelway in June of 2007, and these companies manufactured garments for Kandy Kiss from this fabric.  Hongdou and Apparelway sold the finished garments to Kandy Kiss, pursuant to purchase orders issued by Kandy Kiss.  (KKSGI ¶¶ 6–7, 11–15, 32; PRJN, Ex. B [Plaintiff's 2009 State Court Compl.] ¶¶ 15–17, 19; SAC ¶ 14; 7/12/10 Akin Depo. 83:9–85:9, 88:2–11, 135:12–20; First Zackary Decl. ¶ 17, Exs. C–E (purchase orders from Kandy Kiss to Apparelway and Hongdou for finished garments; Kandy Kiss records showing sales to Target); 10/10/11 Browner Depo. 98:4–17.)

Browner and Zackary provided some assistance with the transactions.  On April 5, Browner wrote to Akin, stating that Pallas "is ready to send goods to Target for testing--but they don't have the . . . three commits. . . ."  (POSAF ¶ 53; Second Lander Decl. ¶ 14, Ex. K.) Browner asked Paramount "to still do whatever [it could] to help Kandy Kiss."  (Plaintiff's Excerpt of 8/19/09 Zackary Testimony 106:3–9; see POSAF ¶ 55.)  On April 20, Zackary forwarded an email from Pallas to Akin, regarding quality control testing conducted in China.  (POSAF ¶ 53; Second Lander Decl. ¶ 15, Ex. L.)  On April 24, Laura Zhang of Kandy Kiss inquired with Zackary and with Pallas as to shipping samples that were to have been sent on April 10.  (POSAF ¶ 54; Second Lander Decl. ¶ 16, Ex. M.)  In July of 2007, Paramount sought

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

a commission, or finder's fee, from Pallas with respect to the sales.  (POSAF ¶ 56; Second Lander Decl. ¶ 17, Exs. N, O.)  However, in August of 2007, Paramount refused to get involved in a dispute regarding shipping charges; Zackary wrote to Pallas stating "please deal with [Kandy Kiss] as they have bought the goods from you direct and you have all details and i have nothi[n]g to do with this."  (Docket No. 65 [First Lander Decl.] ¶ 15, Ex. L.)  Browner was never paid a commission on the order.  (10/10/11 Browner Depo. 50:3–51:25.)

### 5.  KANDY KISS SELLS THE GOODS TO TARGET AND LITIGATION ENSUES

Kandy Kiss subsequently sold the finished garments to Target.  (KKSGI ¶ 14.)  On June 9, 2007, LA Printex sent Target a cease and desist letter, claiming that it owned a copyright in the Design, and that Target was infringing it.  This letter contained proof of copyright registration for the Design.  (Id. ¶ 16; PSDF ¶ 24; 7/12/10 Akin Depo. 113:12–22; Rome Decl. ¶ 16, Ex. N [6/9/07 Cease and Desist Letter].)  Target notified Kandy Kiss of the LA Printex claim around August 13, 2007.  (KKSGI ¶ 17; PSDF ¶ 25; Akin Decl. ¶ 5; 9/30/11 Akin Depo. 115:2–6, 165:11–15.)  After receiving notice from Target, Akin immediately contacted Browner and demanded that Paramount issue a letter formally indemnifying Kandy Kiss.  (PSDF ¶¶ 25–26; Akin Decl. ¶ 6.)

#### a.  *Paramount Refuses Demand for Indemnification*

On August 15, 2007, Browner responded with two e-mails to Akin.  First, Browner wrote:

> Subject: Re: Print Pattern LDLP1034
> To Whom it may Concern:
> Please be advised that Kandy Kiss did not solicit to or provide Paramount Textile any design or original concept for above referenced pattern.
> Paramount Textile took this pattern from it's [sic] own and original design collection and supplied sample yardage to Kandy Kiss and then proceeded to print and deliver to Kandy Kiss bulk production.
> Kandy Kiss had no wrong doing whatsoever in the purchase of fabric print from [P]aramount Textile.
> Regards, David Browner

Later the same day, Browner wrote to Akin:

**LINKS: 62, 63, 69, 84**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|----------|----------------------|------|---------------|
| Title    | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

Subject: Re: Print Pattern LDLP1034
Addendum to "no wrong doing"
Please be advised that original pattern came from Pallas textile and bulk production was shipped and billed by Pallas textile to Kandy Kiss designated contractor. I was made aware of this upon recent questioning of situation at a deeper level.
Regards,
David Browner

(KKSGI ¶ 19; POSAF ¶ 70; PSDF ¶ 27; Akin Decl. ¶ 7, Ex. A [8/15/07 First Browner E-mail], Ex. B [8/15/07 Second Browner E-mail]; see also 9/30/11 Akin Depo. 165:11–166:17; 10/10/11 Browner Depo. 84:5–11.) Akin responded that he had

[n]o idea what this means. Per our conversation your design team developed this pattern. David please understand you need to get your company's lawyers involved and get an official letter indemnifying [K]andy [K]iss. Otherwise you will incur more lawyer fees.

(Akin Decl. ¶ 7, Ex. B [8/16/07 Akin E-mail].) Thereafter, Zackary refused to have Paramount indemnify Kandy Kiss, claiming Paramount was uninvolved in the transaction. (PSDF ¶ 30; Second Zackary Decl. ¶ 23.)[2]

### b. *LA Printex Files Suit*

On January 7, 2008, LA Printex filed a complaint for copyright infringement in the United States District Court for the Central District of California, relating to the finished garments, against Defendants Target Corporation, Target Brands, Inc., Kandy Kiss, Hongdou, and Paramount ("Copyright Action"). (PRJN, Ex. A [Copyright Judgment].) LA Printex won a jury verdict in the Copyright Action on September 11, 2009, in the amounts of $175,000 against

---

[2] Zackary's declaration indicates that Plaintiff's request for indemnification and Paramount's refusal occurred on June 15, 2007, rather than on August 15, 2007. Because all other evidence indicates that the communications occurred on August 15—including the copies of the actual e-mail message sent by Browner—the Court concludes that August 15, 2007, is the correct date.

LINKS: 62, 63, 69, 84

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

the Target entities, $20,000 against Kandy Kiss, and $5,000 against Hongdou, corresponding to the profits earned by these entities on the fabric, and $36,623.73 against all defendants jointly and severally for LA Printex' damages. (KKSGI ¶ 20; Copyright Judgment at 2–3.) Pursuant to an indemnity agreement, Kandy Kiss indemnified Target as to Target's liability and issued checks to Target totaling $176,985.26. (KKSGI ¶ 21; POSAF ¶ 71; Docket No. 77 [Brutzkus Decl.] ¶ 3; First Rome Decl. ¶ 5, Ex. C (Kandy Kiss checks to Target).)

Robert Friedland, Chief Executive Officer of Kandy Kiss, states that, after discovery began in the Copyright Action in 2008, he learned that a company named L'Amour, which is owned by Zackary's brother and maintains its principal place of business in the same building with Paramount, sampled the Design from LA Printex in 2005. It was then that "Kandy Kiss first realized Paramount knew, when [Kandy Kiss] sampled the Design in March 2007, that its representations of title and warranty in the Design made to Kandy Kiss . . . in . . . March 2007 were false." (Docket No. 75 [Friedland Decl.] ¶¶ 6–7.)

### c. *Kandy Kiss' Insurance Claim*

Prior to entry of judgment in the Copyright Action, Kandy Kiss made a demand on its insurance carrier, Hartford Fire Insurance Company ("The Hartford"), for coverage of the LA Printex claim. (POSAF ¶ 57; KKSGI ¶ 23; First Rome Decl. ¶ 3, Ex. A [Kandy Kiss-The Hartford Insurance Policy]; Docket No. 76 [Berman Decl.] ¶ 2.) The Hartford initially denied that it had a duty to defend or indemnify Kandy Kiss, but it never issued a written acceptance or denial, and it expressed willingness to settle the claim. (POSAF ¶ 58; Berman Decl. ¶¶ 3–5.) On May 10, 2009, The Hartford and Kandy Kiss agreed to a settlement of $175,000 in order to "resolve and discontinue th[e] coverage dispute" regarding the Copyright Action, "including any claims for attorney's fees or costs incurred in the future by Kandy Kiss in connection with" the Copyright Action. (POSAF ¶ 58; Berman Decl. ¶¶ 6–7, Ex. A.) Payment was made in two equal checks, issued on May 19, 2009 to Kandy Kiss' counsel in the Copyright Action and in the instant case, Ezra Brutzkus Gubner LLP. (POSAF ¶ 59; Berman Decl. ¶¶ 8–9, Ex. B, C.) Evidence has also been produced in these proceedings that, in 2008 and 2009, The Hartford made payments in the amount of $107,507.13 in connection with matters other than the Copyright Judgment. (KKSGI ¶ 24; Berman Decl. ¶¶ 9–14, Exs. D–G.) The insurance contract between Kandy Kiss and The Hartford contains a subrogation provision, which states as follows:

If any person or organization to whom or for whom we make payment under [coverage] has rights to recover damages from another, those rights are transferred to

**JS – 6**

LINKS: 62, 63, 69, 84

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|----------|----------------------|------|---------------|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

us to the extent of our payment.  That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them.

(KKSGI ¶ 25; Kandy Kiss-The Hartford Insurance Policy at 4.)

Kandy Kiss brought this action against Paramount on December 1, 2010.  (Docket No. 1.) Plaintiff seeks $200,000 in actual damages paid to LA Printex in settlement of its claims and consequential damages of $370,000 in attorney fees incurred in defending the Copyright Action. (SAC ¶¶ 22–23, 30–31, 37, 44, Prayer for Relief.)

**III.**
**DISCUSSION**

**A.  SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  Thus, when addressing a motion for summary judgment, the Court must decide whether there exists "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  Id. at 256.  The moving party can meet this burden by presenting evidence establishing the absence of a genuine issue or by "pointing out to the district court . . . that there is an absence of evidence" supporting a fact for which the nonmoving party bears the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  To defeat summary judgment, the nonmoving party must put forth "affirmative evidence" that shows "that there is a genuine issue for trial."  Anderson, 477 U.S. at 256–57.  This evidence must be admissible.  See Fed. R. Civ. P. 56(c), (e).  The nonmoving party cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, the nonmoving party must show that evidence in the record could lead a rational trier of fact to find for it.  See id. at 587.  In reviewing the record, the Court must believe the nonmoving party's evidence, and must draw all justifiable inferences in its favor.  Anderson, 477 U.S. at 255.

**B.  APPLICATION**

**JS – 6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

### 1. BREACH OF WARRANTY CLAIMS

#### a. *The Parties' Arguments*

Both Parties move for summary judgment as to Plaintiff's claim for breach of express warranty of title under California Commercial Code section 2313; Paramount also moves for summary judgment as to Plaintiff's claim for breach of implied warranty of title and against infringement under California Commercial Code section 2312. As to the express warranty claim, Kandy Kiss argues that, in the context of the Parties' relationship, by sampling the Design to Kandy Kiss with the Paramount header in order to induce Kandy Kiss to purchase from Paramount, Paramount expressly warranted that it had title to or the right to sell the Design, and that, without this warranty, Kandy Kiss would not have purchased the infringing fabric. Moreover, the sample itself created an express warranty that the goods purchased would conform to it, including ownership. (Kandy Kiss Mem. at 12–17; Docket No. 81 [Kandy Kiss Reply] at 9–11; Docket No. 80 [Kandy Kiss Opp.] at 20–23.) Paramount argues that the fabric header does not meet the stringent standards for an express warranty, and that Plaintiff has identified no express statements of Paramount's ownership or right to sell by Zackary or Browner. (Paramount Mem. at 12–14; Docket No. 83 [Paramount Reply] at 9–14.)

Paramount also argues that it may not be held liable for breach of implied warranty of title and against infringement, because the undisputed facts show that it did not deliver physical possession of the fabric used to produce the infringing goods to any entity involved in the transaction, and because the required vertical privity—or "direct contractual nexus"—between Paramount and Kandy Kiss was not present, because Apparelway and Hongdou procured fabric directly from Pallas. (Paramount Mem. at 9–12 (quoting <u>Anunziato v. eMachines, Inc.</u>, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005)); Paramount Reply at 6–9.) According to Paramount, the lack of vertical privity is also fatal to Plaintiff's express warranty claim. (Paramount Reply at 14–15.) Kandy Kiss argues that the delivery and vertical privity requirements were both met because Paramount delivered sample fabric to Kandy Kiss. (Kandy Kiss Opp. at 17–19.) Vertical privity was also present because both Paramount and Kandy Kiss were "links in the chain of distribution of goods," in that Paramount provided the sample to Kandy Kiss and induced and authorized it to procure production fabric from Pallas. (<u>Id.</u> at 19 (quoting <u>Anunziato</u>, 402 F. Supp. 2d at 1141).) Kandy Kiss takes the position that, in any event, it need not establish vertical privity in order to prevail on its express warranty claim. (Kandy Kiss Reply at 9–11.)

**JS – 6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | | Date | June 26, 2012 |
|---|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | | |

As discussed below, the Parties' arguments with respect to Plaintiff's warranty claims largely miss the point. Rather, those claims fail as a matter of law because both express and implied warranties may only be made by the "seller" of goods, and the undisputed facts demonstrate quite plainly that Paramount did not sell the infringing fabric used to make dresses for Target. Nor has Kandy Kiss articulated or demonstrated any basis under which Paramount could be held liable for breach of warranty as an agent for Pallas, which sold the fabric.

    *b. Analysis*

       **i. Express Warranty and the Implied Warranty of Title and against Infringement under the California Commercial Code**

"A warranty relates to the title, character, quality, identity, or condition of the goods." Keith v. Buchanan, 220 Cal. Rptr. 392, 395 (Ct. App. 1985). California Commercial Code section 2313 governs express warranties, and provides:

(1) Express warranties <u>by the seller</u> are created as follows:

    (a) Any affirmation of fact or promise made <u>by the seller</u> to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

    (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

    (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that <u>the seller</u> use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely <u>the seller's</u> opinion or commendation of the goods does not create a warranty.

Cal. Comm. Code. § 2313 (emphasis added). This provision adopts the official text of the

**JS – 6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

Uniform Commercial Code ("UCC") § 2-313 without change.  <u>Keith</u>, 220 Cal. Rptr. at 395.

California Commercial Code section 2312(3) imposes on "merchant[s] regularly dealing in goods of the kind" an implied warranty against patent and trademark infringement.  The section provides, in relevant part, that, "Unless otherwise agreed <u>a seller</u> who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like . . . ."  Cal. Comm. Code § 2312(3) (emphasis added).  This provision and the others in section 2312 were adopted without alteration from section 2-312 of the UCC, which itself derived from the implied warranty of title that emerged at common law.  <u>Pacific Sunwear of California, Inc. v. Olaes Enterprises, Inc.</u>, 84 Cal. Rptr. 3d 182, 186 (Ct. App. 2008).  The Commentary to the UCC explains the policy behind the provision: "[w]hen the goods are part of the seller's normal stock, and are sold in the normal course of business, it is the seller's duty to see that no claim of infringement of a patent or trademark by a third party will impair the buyer's title."  U.C.C. § 2-312 cmt. 1.  "Courts have interpreted section 2-312(3) to entitle the buyer of an infringing good to indemnification from the seller for any claims by a third party for infringement."  <u>Johnson Elec. North America v. Mabuchi Motor America Corp.</u>, 98 F. Supp. 2d 480, 489 (S.D.N.Y. 2000) (citations omitted).  The claim requires a four-part showing, that: "the seller was a merchant regularly dealing in goods of the kind, the goods were subject to a rightful infringement claim of any third party upon delivery, the buyer did not furnish specifications to the seller, and the parties did not form another agreement."  <u>Phoenix Solutions, Inc. v. Sony Electronics, Inc.</u>, 637 F. Supp. 2d 683, 693 (N.D. Cal. 2009); <u>see also</u> <u>CGS Industries, Inc. v. Charter Oak Fire Ins. Co.</u>, 777 F. Supp. 2d 454, 461 (E.D.N.Y. 2011) (same); <u>84 Lumber Co. v. MRK Technologies, Ltd.</u>, 145 F. Supp. 2d 675, 678–79 (W.D. Pa. 2001) (same).

### ii.  Under the Commercial Code, Paramount Was Not a "Seller" of the Infringing Fabric

Under the California Commercial Code, a seller is defined as "a person who sells or contracts to sell goods."  Cal. Comm. Code § 2103(1)(d); <u>accord</u> Uniform Commercial Code § 2-103(1)(o).  "A 'sale' consists in the passing of title from the seller to the buyer for a price."  Cal. Comm. Code § 2106.  "[A] sale is ordinarily an essential element of any warranty, express or implied."  <u>Fogo v. Cutter Laboratories, Inc.</u>, 137 Cal. Rptr. 417, 426 (Ct. App. 1977); <u>accord</u> <u>Shepard v. Alexian Brothers Hosp.</u>, 109 Cal. Rptr. 132, 137 (Ct. App. 1973) (finding that warranties do not extend to the service of transfusing blood).

**LINKS: 62, 63, 69, 84**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

Examining the undisputed facts of the transactions at issue in this case, it is clear that Paramount does not qualify as the "seller" of the fabric used to produce the garments subject to the Copyright Action.  These facts show that (1) on March 16, 2007, Kandy Kiss sent three "fabric commitments" to Paramount for production yardage of fabric bearing the copyrighted Design; (2) on March 22, 2007, Paramount advised Kandy Kiss ***that the pattern belonged to Pallas***, and that fabric should be ordered directly from Pallas; (3) Browner and Zackary thereafter remained involved in the negotiations over Pallas' sale of the fabric; (4) Chinese garment manufacturers Apparelway and Hongdou sent purchase orders to Pallas for the fabric, which Pallas manufactured and delivered to them; and (5) Apparelway and Hongdou sold the finished garments to Kandy Kiss, pursuant to purchase orders from Kandy Kiss.  In this chain of events, no title to the fabric used to produce infringing sundresses passed from Paramount to Kandy Kiss.  Put simply, Paramount did not sell the fabric; rather, Pallas did.

Neither did Paramount "contract[]to sell" the production fabric to Kandy Kiss.  In California, "[c]ontract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense.'"  Bustamante v. Intuit, Inc., 45 Cal. Rptr. 3d 692, 698 (Ct. App. 2006) (citing Cal. Civ. Code §§ 1550, 1565, 1580).  "Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror.  An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."  Lopez v. Charles Schwab & Co., Inc., 13 Cal. Rptr. 3d 544, 548 (Ct. App. 2004) (internal quotation marks and citations omitted).  "An offer must be sufficiently definite, or must call for such definite terms in acceptance, that the performance promised is reasonably certain."  1 B.E. Witkin, Summary of California Law § 137 at 176 (10th ed. 2005).

The undisputed facts in this case permit only one conclusion: no contract was formed between Paramount and Kandy Kiss for the sale of production fabric.  No definite contract terms were proposed until Kandy Kiss issued its fabric commitments identifying the fabric desired; providing quantity and pricing; and containing other definite terms, including the shipment location and a request for shipment of sample production by a certain date.  (See Second Lander Decl. ¶¶ 8–10, Exs. E, F, G.)  However, Paramount's subsequent actions may only be viewed as a definite rejection of Kandy Kiss' offer to contract.

Nor has Kandy Kiss articulated any basis under which Paramount could be held liable for breach of warranty under an agency theory.  "Normally, the agent will not be liable on a written contract made in the name of the principal."  3 B.E. Witkin, Summary of California Law § 196

**JS – 6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

at 248–49.  California law provides an exception to this rule "if the agent enters into the contract" in bad faith, that is, "without believing that he or she has the authority to do so."  Id. at 249.  No evidence has been produced that Pallas and Kandy Kiss entered into a written contract for the sale of the infringing fabric, or that Paramount "enter[ed] into" any such contract on Pallas' behalf.  Rather, the evidence demonstrates only that Paramount showed a fabric sample to Kandy Kiss, and subsequently helped facilitate the sale of a larger quantity of the fabric from Pallas to Kandy Kiss' contractors, Apparelway and Hongdou.  Plaintiffs also cannot point to bad faith on Paramount's part, since the evidence shows that it believed, at the time of the sale of the fabric, that Pallas owned the Design.  (See 3/22/07 Click E-mail; Defendant's Excerpt of 8/19/09 Zackary Testimony 76:1–15.)  Friedland provides no foundation for his statement that L'Amour sampled the Design from LA Printex in 2005.  (See Friedland Decl. ¶ 6.)  However, even if credited, this statement does not demonstrate that Paramount knew that the design belonged to LA Printex.  Moreover, even were the elements for agency liability present, Kandy Kiss has not argued or shown that the warranty provisions of the California Commercial Code are intended to apply to a sales contract involving Chinese entities.

Finally, even if all of these hurdles could be overcome, the undisputed facts clearly establish that no express warranty was made in this case.  Paramount made no representation as to ownership of the fabric other than to state that it did ***not*** own the design.  It can hardly be said to have warranted that which it has disclaimed.

The Court concludes that, because the undisputed evidence shows that Paramount was not the "seller" of the infringing fabric within the meaning of the California Commercial Code, and disclaimed any ownership in the fabric pattern, Plaintiff's claims for breach of express warranty and breach of the implied warranty of title and against infringement fail as a matter of law.  Accordingly, Paramount's motion for summary judgment as to these claims is **GRANTED**, and Plaintiff's motion for summary judgment as to the express warranty claim is **DENIED**.

**2.  MISREPRESENTATION CLAIMS**

Plaintiff's claims for fraudulent and negligent misrepresentation are premised on the allegation that Paramount sampled the Design from LA Printex in 2005, and thus knew in March 2007 that it did not have the right to sell the Design.  (See SAC ¶¶ 33–34, 39–43; Friedland Decl. ¶ 7.)  Paramount moves for summary judgment, arguing that these claims are time-barred under California Code of Civil Procedure section 338(d).  As set forth below, the Court agrees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

In California, the elements of intentional, fraudulent misrepresentation are as follows: "(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and, (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff." Perlas v. GMAC Mortg., LLC, 113 Cal. Rptr. 3d 790, 794 (Ct. App. 2010). A claim for negligent misrepresentation contains the same elements, "except there is no requirement of intent to induce reliance." Cadlo v. Owens-Illinois, Inc., 23 Cal. Rptr. 3d 1, 5 (Ct. App. 2004).

Under the California Code of Civil Procedure, "[a]n action for relief on the ground of fraud or mistake" must be brought within three years of the accrual of the claim. Cal. Code Civ. Proc. § 338(d). This limitation period applies to claims for intentional and negligent misrepresentation. See Cullen v. Corwin, --- Cal. Rptr. 3d ----, 2012 WL 2049495, at *1 (Ct. App. June 7, 2012). However, the "cause of action . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Code Civ. Proc. § 338(d). Thus, the limitation period begins to run "when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation." Gen. Bedding Corp. v. Echevarria, 947 F.2d 1395, 1337 (9th Cir. 1991). Courts

> 'interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing. The statute of limitations begins to run when the plaintiff has information which would put a reasonable person on inquiry. A plaintiff need not be aware of the specific facts necessary to establish a claim' . . . [or] of every fact that it ultimately relies upon in its pleadings . . . .

Stichting Pensioenfonds ABP v. Countrywide Financial Corp., 802 F. Supp. 2d 1125, 1140 (C.D. Cal. 2011) (quoting Kline v. Turner, 105 Cal. Rptr. 2d 699, 702 (Ct. App. 2001)). The plaintiff need not have notice of a "specific intention to deceive"; rather, "[a]ll that is relevant is that a reasonable person—especially a sophisticated [party]—would have been on notice of a potential misrepresentation." Hamilton Materials, Inc. v. Dow Chemical Corp., 494 F.3d 1203, 1206–07 (9th Cir. 2007). Generally, statute of limitations questions raise issues of fact; however, summary judgment is proper "when the uncontradicted facts are susceptible of only

**JS – 6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

one legitimate inference." <u>Kline</u>, 105 Cal. Rptr. 2d at 703.

     If indeed Kandy Kiss at one point believed that Paramount had represented ownership in the Design and if Kandy Kiss persisted in the belief despite being told that the Design belonged to Pallas, Paramount asserts that Kandy Kiss was placed on notice of a potential dispute over ownership and the possibility of misrepresentations as to Paramount's rights to the Design in June 2007, when Target notified Kandy Kiss of the cease and desist letter from LA Printex, which included proof of LA Printex' copyright registration for the Design.[3]  Kandy Kiss' assertion of its misrepresentation claims in this lawsuit on December 1, 2010, was therefore untimely.  (Paramount Mem. at 14–16; Paramount Reply at 16–19.)  Kandy Kiss argues that the cease and desist letter put it on notice only that "the Design infringed on LA Printex' rights," but not that "Paramount's representations concerning ownership of the Design were fraudulent." (Kandy Kiss Opp. at 24.)  Instead, it was put on notice of wrongdoing only when it purportedly learned, during the course of the Copyright Action in 2008, that Paramount/L'Amour had sampled the design from LA Printex in 2005.  (<u>Id.</u> at 23–24.)

     This argument bears little connection to reality.  How Paramount might have come into possession of the design is secondary to the fact that LA Printex claimed ownership of the Design.  Once Target put Kandy Kiss on notice of that fact, one could not help but draw the logical inference that a representation by Paramount that it owned the Design might well be false.  A sophisticated party like Kandy Kiss must pursue the inquiry with dispatch or forever lose its right to make any claim.  This obligation would be particularly acute where, as here, Paramount had months earlier acknowledged that it did not own the design, but rather that the Design belonged to Pallas,' the Chinese fabric manufacturer.  In short, the undisputed facts here are susceptible of only one reasonable inference: that Plaintiff was placed on notice of any potential misrepresentations by Paramount as to its right to sell the Design no later than August 13, 2007, when Target notified Plaintiff of the LA Printex cease and desist letter, which included proof of LA Printex' copyright ownership, and Akin immediately demanded that Paramount indemnify it.  (Akin Decl. ¶¶ 5, 6; 6/9/07 Cease and Desist Letter.)  Although Paramount, through Browner, initially refused the demand on the basis that it owned the Design, (8/15/07 First Browner E-mail), it quickly corrected the message in an "[a]ddendum," stating that the "original pattern came from Pallas textile and bulk production was shipped and billed by Pallas

---

    [3] As discussed in note 2 <u>supra</u>, Paramount mistakenly argues that Target notified Plaintiff of the cease and desist letter from LA Printex on June 15, 2007.  The evidence before the Court indicates that Plaintiff was not notified by Target until a few days before August 15, 2007.

**JS – 6**

LINKS: 62, 63, 69, 84

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

[T]extile to Kandy Kiss designated contractor." (8/15/07 Second Browner E-mail.) This was the same information that had been provided in the Click email in March 2007.

It is also worth noting that, at that point in time, Kandy Kiss had already been sued by LA Printex <u>five times</u> on copyright infringement claims. (KKRJN, Exs. A–E.) Akin's response to Browner—demanding indemnification and threatening litigation—demonstrates that he entertained <u>actual suspicion</u> that Paramount had misrepresented that it had the right to sell the Design. (<u>See</u> 8/16/07 Akin E-mail.) This demonstrated suspicion of wrongdoing satisfies the constructive notice standard under Section 338(d), and actual information regarding the facts underlying Plaintiff's claims—which did not come until sometime in 2008—was not required. Because Kandy Kiss had constructive notice of potential wrongdoing by Paramount no later than August 15, 2007, its claims for fraudulent and negligent misrepresentation, asserted on December 1, 2010, came too late. Accordingly, Paramount's motion for summary judgment as to these claims is **GRANTED**.

**3. THE PARTIES' ALTERNATIVE ARGUMENTS FOR JUDGMENT IN THEIR FAVOR**

*a. Plaintiff's Objection to Paramount's Motion for Summary Judgment for Failure to Meet and Confer*

Kandy Kiss asks the Court to strike Paramount's motion for summary judgment in its entirety, on the basis that Defendant failed to adequately meet and confer 10 days prior to filing the motion, as required by this judicial district's Local Rule 7-3. (Docket No. 69.) This rule requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, <u>preferably in person</u>, the substance of the contemplated motion and any potential resolution." C.D. Cal. R. 7-3 (original emphasis). The conference deadline for a motion for summary judgment is at least 10 days prior to filing the motion. <u>See id.</u>

The Court has reviewed the Parties' correspondence, produced as evidence in support of and in opposition to Plaintiff's request to strike. (<u>See</u> Docket No. 70 [Tashroudian Decl.] ¶¶ 2–17, Exs. A–L; Docket No. 71 [Third Rome Decl.] ¶¶ 3–13, Exs. A–D.) It is apparent to the Court that Paramount did not comply with the meet and confer requirement, either technically or in good faith. However, it is also apparent to the Court that many of the issues raised in Paramount's motion were discussed in the weeks and months leading up to its filing, including at the timely conference initiated by Plaintiff with respect to its motion. Moreover, Kandy Kiss has identified no prejudice suffered as a result of Paramount's failure to comply with Rule 7-3, and it

**JS – 6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|----------|----------------------|------|---------------|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

is apparent by the cross-motions made by Kandy Kiss that the meet and confer would not have altered the proceedings in any way.  Moreover, Kandy Kiss suffered no prejudice as it was able to mount a vigorous opposition to the motion and to present its own motion for summary judgment.  Accordingly, the request to strike is **DENIED**.

### b. *Paramount's Standing Argument*

Paramount takes the position that Plaintiff does not have standing to prosecute its claims, or, at least, to seek significant portions of the damages sought.  Although not necessary to the determination of Paramount's motion for summary judgment, these arguments bear on Paramount's ex parte application, discussed below.  According to Paramount, Plaintiff does not have standing to prosecute any claims in this action because, pursuant to the subrogation provision in the insurance contract between Plaintiff and The Hartford, all of Plaintiff's claims arising out of the Copyright Action were assigned to the carrier on its payment to Plaintiff of $282,507.10.  In the alternative, Plaintiff does not have standing to seek to recover the amount paid by the carrier.  In addition, Plaintiff does not have standing to seek the $175,000 paid out on Target's behalf in satisfaction of the judgment in the Copyright Action, because the claim for recovery of this amount belongs to Target and has not been assigned to Plaintiff.  (Paramount Mem. at 1, 7–8; Paramount Reply at 4–6.)

Paramount's standing arguments entirely lack merit.  The standing doctrine under the U.S. Constitution requires that those seeking to invoke federal jurisdiction "must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."  City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983).  To satisfy Article III, the plaintiff must show that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Maya v. Centex Corp., Nos. 10–55658, 10–55660, 10–55662, 10–55663, 10–55664, 10–55665, 10–55667, 10–55668, 2011 WL 4381864, at *2 (9th Cir. Sept. 21, 2011) (quoting  Friends of the Earth v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000)).

As to Paramount's arguments with regard to payments made by The Hartford, as an initial matter, the undisputed evidence shows that the carrier made payments of $175,000, not $282,507.10, to Plaintiff in connection with the Copyright Action; the amounts above $175,000 were paid in connection with a different claim.  (See Berman Decl. ¶¶ 7–14, Exs. A–G.)

**JS – 6**

LINKS: 62, 63, 69, 84

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

Moreover, the payment and the subrogation provision in the insurance contract do nothing to diminish Plaintiff's standing in this action.  First, Plaintiff provides evidence that it was actually injured above and beyond the $175,000, and it alleges that this injury was caused by Paramount. Second, pursuant to the subrogation provision, Plaintiff's rights are transferred to The Hartford only "to the extent of [The Hartford's] payment."  (Kandy Kiss-The Hartford Insurance Contract at 4.)  Although Plaintiff is obligated to "do nothing after loss to impair" The Hartford's rights, its prosecution of this action has not done so; indeed, under California law, The Hartford's subrogation rights do not mature until Plaintiff is made whole for its losses.  See Chandler v. State Farm Mut. Auto. Ins. Co., 596 F. Supp. 2d 1314, 1318 (C.D. Cal. 2008).[4]  Thus, Plaintiff does not "lack standing" to pursue any or all claims in this action.

Nor does Plaintiff lack standing to seek to recover the $175,000 paid on Target's behalf in the Copyright Action.  The undisputed evidence shows that Plaintiff fully indemnified Target for this amount.  (See KKSGI ¶ 21; POSAF ¶ 71; Docket No. 77 [Brutzkus Decl.] ¶ 3; First Rome Decl. ¶ 5, Ex. C.)  Thus, Paramount is simply wrong: the claim for recovery of this amount does not belong to Target, but to Kandy Kiss, which suffered the loss.

**C.  PARAMOUNT'S EX PARTE APPLICATION FOR LEAVE TO FILE A RULE 11 SANCTIONS MOTION**

After filing its motion for summary judgment, Paramount applied to the Court ex parte for leave to file a motion for Rule 11 sanctions after the motion cut-off date.  (Docket No. 84 [Ex Parte App.].)  The application is made on the purported basis that Plaintiff "deliberately concealed critical information bearing on [its] standing to pursue this action as well as its claim for attorneys' fees it purports to have accrued in the underlying litigation."  (Id. at 1.)  According to Paramount, it discovered only weeks prior to the last day to file motions in this action—via evidence produced in response to its motion to compel—of the existence of Plaintiff's settlement agreement with The Hartford and that the carrier had paid out a total of $282,507.13 directly to Plaintiff's counsel during the pendency of the Copyright Action.  Yet Plaintiff filed three separate complaints in this action seeking $370,000 in attorney fees incurred in the Copyright Action—most of which, Paramount contends, has already been compensated by The Hartford. Paramount also complains that Plaintiff has engaged in spoliation of evidence by delaying in

---

[4] Paramount argues that Plaintiff has impaired The Hartford's rights by failing to notify it of the instant action.  (See Paramount Mem. at 5.)  Paramount provides no evidence to substantiate this argument.

**JS – 6**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-9215 GAF (CWx) | Date | June 26, 2012 |
|---|---|---|---|
| Title | Kandy Kiss of California Inc v. Tex-Ellent Inc et al | | |

producing all insurance documents, and ultimately failing to produce some documents, including Plaintiff's demand letter and The Hartford's response.  After receiving the settlement agreement and the evidence of The Hartford's payments, Paramount prepared the Rule 11 sanctions motion and provided it to Plaintiff's counsel, who refused to withdraw.  The Rule 11 "safe harbor" period of 21 days expired only 10 days prior to the final day for hearing motions in this action, leaving Paramount with insufficient time to file a regularly-noticed motion.  (Id. at 1–3; Docket No. 84-1 [Fourth Rome Decl.] ¶¶ 3–6; see Docket No. 84-3 [Proposed Sanctions Motion].)  Paramount seeks dismissal of Plaintiff's action, or at least its claim to compensation for attorney fees incurred in the Copyright Action, as well as the assessment of Paramount's own attorney fees incurred in defending this action.  (Proposed Sanctions Motion at 14.)

Paramount's proposed motion for Rule 11 sanctions is without merit.  As an initial matter, the Court has already concluded that Plaintiff was compensated $175,000 by The Hartford for losses incurred in the Copyright Action, not $282,507.13 as Paramount contends.  Moreover, Plaintiff's prosecution of this action has been in no way improper.  Rather, all that has occurred is that Plaintiff has sought to recover from Paramount $570,000 in actual and consequential damages in connection with the Copyright Action, an amount that includes its payment of the judgment and the attorney fees incurred.  Although Plaintiff has been paid $175,000 from its insurance carrier in connection with these losses, Plaintiff could properly prosecute this action, because The Hartford's subrogation rights do not arise until Plaintiff is made whole.  Paramount's spoliation argument is also not well-taken, since the evidence suggests, at most, non-prejudicial delay in producing documents.  Accordingly, Paramount's application for leave to file a Rule 11 sanctions motion is **DENIED**.

### IV.
### CONCLUSION

Based on the foregoing discussion, the Court **GRANTS** Paramount's motion for summary judgment as to all Plaintiff's claims, and **DENIES** Plaintiff's motion for summary judgment as to its claim for breach of express warranty.  Plaintiff's request to strike Paramount's motion for summary judgment, and Paramount's ex parte application for leave to file a Rule 11 sanctions motion are both **DENIED**.

**IT IS SO ORDERED.**